Good morning again. We're ready for Godinez-Ortiz. Counsel. Good morning, Your Honors. Vince Bronco, Federal Defenders, on behalf of Mr. Godinez. Once the District Court determined that there is no substantial probability that Mr. Godinez would attain capacity to continue the proceedings, and no medical facility had certified that there is a substantial risk of bodily injury to another or serious property damage. Let me back up to a preliminary question, the jurisdictional question. I know that we do have collateral order jurisdiction under Cohen and Friedman for an incompetence to stand trial determination, because if a person's found incompetent to stand trial, they may never have a trial. There may never be a final judgment in the criminal case. So that's the only way we can see if it's fair. However, here we don't have an incompetence to stand trial determination, and I'm not clear on why this case cannot come up again after a final judgment. Because essentially it is unrenewable. His being required to go to the medical facility, no court will be able to review that. Well, that strikes me as the wrong way to look at it, actually. Sure, we can't review before he goes to the medical facility whether he goes to the medical facility, but if that were the Cohen standard, we would have collateral order review in every case. Every time a judge said, I order you to answer the interrogatories, the interrogatories would be answered before we got the case on appeal after final judgment. So that has to be too broad a test. The test has to be, is there any way to correct substantial error after a final judgment? Incompetence to stand trial, you don't get a final judgment. Here, there's going to be a final judgment. No, there isn't. I mean, if he's sent back. The judge already said, I'm dismissing the case, but I'm not going to file the order until we find out whether we can civilly commit him.  So it looks like. He should be released. Well, it looks like we can review it then when the judge either dismisses the case or civilly commits. No, because he's ordered him to be transported to a medical facility, and where the medical facility is going to make a determination under 4246, whether or not to initiate proceedings to civilly commit him. And you're saying we have collateral review then every time a man is sent to be examined? I think that's pretty much the law, but just using the common factors. It has to be conclusive. Unless this court steps in, he'll be sent to the medical center. It has to be an important question. I think there's no doubt that whether or not sending someone to a medical facility that could result in a civil commitment. Wait, I doubt. I don't understand what's wrong with 30 or 45 days to examine somebody to determine his medical condition. Because it's not authorized by statute. You have to have authority under the statute or due process. I mean, the whole point of these 4240 series of statutes is that Congress wanted to codify them. Is there any harm? Is there any particular harm other than that it isn't authorized by statute? I can see the harm in the incompetence to stand trial. The man may be locked up forever without a trial. But I can't see the harm in 30 days for the psychiatrist to determine whether he's nuts and dangerous. Well, it's the same thing. The ineffective assistance, the reason that we review it is not because we think, oh, it would be just terrible for the psychiatrist to examine the fellow. The reason we review it is because he may never get a trial and a criminal judgment and be locked up forever. Well, the same thing may happen if he's civilly committed. If he's civilly committed under 4246, he may never have the opportunity to have that review. Why couldn't he get review if he is civilly committed for mental illness and dangerousness? Why couldn't we then review the judgment that civilly committed him? Well, it's twofold. First, it wouldn't be here in the circuit because under 4246, if they decide to make the certification, that's going to be in the district where he's being hospitalized. The D.C. Circuit or the Fourth Circuit, they're as good as we are. Well, if he can get review in a circuit court, what's the problem? He'll only be able to review those 4246 proceeds. He'll never get any review of the district court acting outside of statutory authority of sending him to the medical facility in the first place. So that won't be able to be reviewed by any court unless this court sets it. So we could decide whether it was okay to civilly commit him, but we couldn't decide whether the timing of the mental examination was or we could decide that the timing of the mental examination was improper, but since it had already occurred, it wouldn't be effective. Is that the argument? The actually sending him to a medical facility without statutory authorization, he'll never be able to get review of that. So basically you're here because your position is with the charges dismissed, even if they haven't been finalized, is that the district court had to do what to your client? Release him on the street for deportation at that point? Correct. Absolutely. Under the statute. Under the statute. So any time that he spends in custody after that point in time is a deprivation of his liberty in violation of the statute, constitutional violation, statutory violation, all of that. Correct. If he goes back and at the end of 45 days they clear him and say, no, he's not dangerous and he's released, he will have spent 45 days in a hospital when he didn't, when there was no authority to put him there in the first place. Correct. And he will be subject to examination. And then under your scenario, because you say that under the posture of this particular case, the court lacks any way in which to get this person into a medical facility, because he is admittedly currently incompetent and there's no prospect for his returning to competency. So as the district court made quite clear, he wants to know whether if he releases this fellow and he's deported, he may go to Mexico as I understand it, but the concern is he'll come right back across the border. And if he's dangerous, basically he hasn't been convicted of the charges which brought him into the district court, but he can't be tried for it. So essentially the district court is powerless, in your view, to find out whether or not this fellow is dangerous before he's put back on the streets, whether it be physically in the United States or across the border with some probability of return. He's powerless in this case because the time limitations for being sent to the medical facility under 4241D have expired, meaning when there's initially a competency concern and he was sent to the medical facility, as Mr. Godinez was for four months, the district court could have said, look, I'd like to know if he's dangerous. When he's sent him back the second time, he actually asked for a dangerous mishearing in a slightly different context, whether or not we should forcibly medicate pursuant to Harper. So this medical, he sent Mr. Godinez back to the medical facility twice, and the medical facility has essentially said, you know what? He has a mental problem, but we're going to give him back to you because he doesn't need medical attention. No, no, they didn't say that. They said he needs medication and there's a possibility, he's schizophrenic, there's a possibility that medication might make him competent, but he refuses medication. That's what they said. Yes, they said that the medication could make him competent. They said it might make him competent. But they also said he does not need medication because he's not dangerous to those around him, and he's taking care of himself. What they said was that they could manage him within the institution, but he's killed a man. He's schizophrenic and he's killed a man. I'm not all that happy about sending him to kill people in Mexico instead of the U.S. There's no evidence in the record that he's currently dangerous. I mean, think of what these statutes are. There's no evidence in the record that he isn't. Here's the problem I have with your arguments so far. You get down to 4241D, and you've read it probably a million times. You go through all these hearings to determine exactly where he is, and if it turns out that he can't defend himself, then you give a little more time to see whether he can recover and defend himself. But then when you get to the final bottom line, it talks under B of the pending charges against him are disposed of according to law, whichever is earlier. If at the end of the time period specified, it is determined that the defendant's mental condition is not so improved as to permit proceedings to go forward, in other words, it's the end of the line. There's not going to be a trial. Then the defendant goes to 4246 and 4248, not out the door. It says that those proceedings are applicable, and I think it's significant that But it doesn't say he goes out the door when you get to the end of the line and you can't try him. The charges have been dismissed. So then he says you go to 4246. You're saying he goes out the door. To me, this reads he goes to 4246 and 4248. Yes, and then let's read 4246. It says, institution of proceeding. If the director of a facility in which the person is hospitalized certifies that a person in the custody of your prison, etc., then he files the certification. Meaning, yes, he's subject to this provision. So you send him there, and then the director gets to make a decision. But there's no authority to send him there. He needs to be there. Functionally, what this – how this works is usually under 4142d. The person is at the medical facility. I think where we've gotten in the logic so far is that if he can't be tried under 4241, then he goes to 4246. And what you've said now is, if I understood you right, you can't send him for the examination under 4246 because the director has not given him the certification. But how can the director of the medical facility give him a certification if he has not had an opportunity to examine him? He's had an opportunity to examine him. He was examining him for a different thing. Different thing. Competency to stand trial. That's different from the question to be answered is different. A lot of people are insane but competent. A lot of people are insane but incompetent. And some people are incompetent to stand trial because of insanity, but they're not dangerous to others. For example, somebody who has catatonic schizophrenia. But Congress has decided to deal with all these situations by the statutes in 4140, et cetera. It gives basically different ways to get into a medical facility when you're in the period. You're seizing on this word hospitalized and saying because he's in court not hospitalized, you can't get him hospitalized. I mean, that makes a fool out of the statutory scheme. It doesn't when one considers what the statute is. It assumes coming out of B that, okay, now he's going to be hospitalized. And then it simply says in A, if the director of that facility comes up with a certificate, then you proceed from there. And you're saying, whoa, there's nothing in between that says, and the court shall then transport him to the facility or the hospital. Because he's supposed to be at the facility in the first place. How can he be in court and the facility at the same time? There's no authorization for him to come back. It's implicit. It's obvious to me reading this that you then send him to the facility. Let's look at 4241D. And it says, if, after, and et cetera. But look at the last line before Paragraph 1. The attorney general shall hospitalize the defendant for treatment in a suitable facility. And then it goes through the different time periods where he should, that he can do it. And then it says, because he's hospitalized in that facility, if you come to the end of this period, then we go to 4246. So if you bring him to court to dispose of the charges, you can't send him back. But if you leave him in the hospital and dispose of the charges in his absence, then you can go forward. That's a preposterous reading of these statutes to me. It's not a preposterous reading when you think about what the medical center is supposed to do. They're not supposed to release dangerous people to the general population. I'm sure there's many people in the Bureau of Prisons that have mental issues that aren't in a medical facility. There's something I'm not getting here. You seem to be saying they've had one chance to do a medical examination. They've had two. But they were looking for different things. One is they have something in common. The schizophrenia, the mental illness is in common. But they have a not-in-common issue as between competence to stand trial and dangerousness. Now, it seems to me that you're saying they only get one chance is an impossible medical problem. It's like the doctor sends you for a blood test to determine your white count, and then he sends you for a second blood test to determine your red count. Well, he already knew that you had some medical problem. That's why he sent him for the blood test. But the first test didn't answer what he was looking for in the second test. Likewise here, the judge sent him for a first examination to determine competency. Now he sends him for a second examination to determine mental illness and dangerousness. I don't see how it can be coherent to say that he has to determine dangerousness from the medical examination that was done to determine competency but not dangerousness. The basic heart of the argument is a medical facility, when they have people from the Bureau of Prison, whether or not it's by 4142, 4244, 4245, that they have an obligation to, when they're treating someone, be considering is this a person that's going to be dangerous if released. Why? Because. If they haven't been asked the question, why do they have an obligation to answer it? The judge told them what they could examine them for. It seems to me that far from having an obligation, they might have an obligation not to do medical examinations beyond what the person's been sent to them for a medical examination of. That would not be consistent with 4246A, would it? Because 4246A presumes that the person is in custody, is hospitalized, and puts upon the director of the facility the obligation to certify if he concludes somebody's dangerous. So your argument is that he's been sent twice to FMC in both conditions. He was there for observation of his mental capacity, and 4246 provides for what happens in the event, in the course of those proceedings, the director finds and certifies that the person may be dangerous, but leaves to the district court the determination. So my question then, having gone through that process, and there having not been a certification up to this point, which is the problem, 4241D2 says that you can extend the initial four months for an additional reasonable period of time until his mental condition is so improved and so on and so forth, if there's a probability that he could recover, or B, the pending charges against him are disposed of according to law. All right, now, at the time he was back in June before Judge Lorenz, the proceedings had not been disposed of according to law, right? Correct. So why wasn't it possible at that point to say, I'm not going to finally dispose of this, I want a certification as to his dangerousness, and have him put back to Butner, which is still part of this reasonable time period, and then get a certification one way or the other? And then that's the point. You're saying that that could have happened, that would have been the posture, if during the course of the prior two hospitalizations the director on his own initiative had made that determination, but he didn't, and as Judge Kleinfeld and Judge Trot have adverted to, he wasn't directed to make that finding. So the question now before the district court, look, this director didn't trigger 4246. That's not my fault as the district court. They're the experts on mental condition. That's what I was focused on. Under your reading, because the district court didn't direct the director of FMC and the FMC director didn't initiate it, you get this guy, under your theory, no matter how wacko and dangerous he is, once the time limit's run out and they haven't, under your analysis, done it right, whammo, he's out on the streets, whether he's going to Mexico or up the road to Rancho Santa Fe or whatever. What? How are they going? What happens in that situation? There's two protections here. One is the person's function, as a practical matter, not going to be released from the medical center. If he is so wacko, he can't function, meaning they won't release someone to a general prison population, which Mr. Godinez has been living in. Where's he going to go? What? Where's he going? He's sitting in the... Now, where would a person go? You say he can't be hospitalized and there are no pending charges against him because... It's no longer the role of the district court to get involved. Once he determines that we can't restore him to competency and there's no likelihood, if he makes that determination... Just answer the question, where is he going to go? Mexico. Okay, but he's not a deportee in my hypothetical. He's just an ordinary U.S. person and he is wacko and he is homicidal. He's done something in court that has created a... He has told the judge sitting there, he has one of his relapses, and he says, as soon as I get out of here, judge, I'm going to cut your throat apart. You're going to pick him up on a threat, I suppose, but let's suppose it's not so dramatic as that. Now you've got somebody... Everybody in the courtroom thinks this guy's scary. He hasn't made any overt threat, but everybody agrees. Under your analysis, the district court washes its hands and says, too bad, not my responsibility anymore. Judge Lorenz says he wasn't going to do that. I want to know, where does he go with that kind of... Where does this threatening defendant go in that circumstance? I would say the district court would order under 4142D an evaluation to see if this person is competent and whether or not he's a danger. But this thing, he's done that twice. That's what I'm saying. So I'm asking for your rule. How does it apply in my hypothetical? Too bad the district court slipped up, too bad the director slipped up, and you've got a murderous person you've got to turn loose on the streets. If you can't... If the district courts don't have the authority, yes. Yes. Okay, that's all I wanted to know. Because if you don't have the authority to get them into the matter... I understand the legal argument. I just want to understand if your position really translates down to if the process isn't followed, a obviously dangerous person must nonetheless be released. When you put it in that extreme, it sounds really bad. But when you put it in the practical, what's going to happen? I mean, the thing is... What's going to happen? You told me he's going to be deported. You started out by saying he's going to be released. He has to be released. Yes, but if this person is really this dangerous, there's no way the medical facility is going to say, oh, he's all right. They didn't. They would assert it. What? They didn't. They said he's schizophrenic. It's my point. We don't have this dangerous person. That doesn't mean he's not dangerous. He killed a man. What? He killed a man. They didn't say he's not dangerous. The issue is whether they're going to get a chance to evaluate him for dangerousness. No, they specifically said under Harper he does not meet the Harper dangerousness test. The way I understand your argument, if he had been sent to the hospital and never came to court again and was still in the hospital, your argument wouldn't work because he's hospitalized. Correct. You're saying the fact they brought him back to court broke the chain. The fact that you can look at both the medical reports. Isn't that right? If he had stayed in the hospital, your argument wouldn't work. And the medical center specifically said. And then the director could go ahead now and come up with a certificate or not. In each of the orders, the medical director specifically said it's okay for him to go back to the jurisdiction. You're saying that he already has a certification that he's not dangerous. I didn't. I must have overlooked it when I looked at the record. Could you just direct me to the excerpts page where they say he's not dangerous? I'm sure you have a tab on it and an underlining and a big star. Page 33. It was the finding. Oh, there it says in it that he doesn't present an imminent risk of harm to others in an institutional setting. In an institutional setting is different from out of an institutional setting. In jail, that's an institutional setting. On the street, either in the U.S. or Mexico, that's out of an institutional setting. That's how I read that sentence. I'm reading the last sentence of the second full paragraph. It was not the finding of the hearing officer. Mr. Godinez did not meet the criteria. Page 33 or we still at 33? I'm sorry, 32. 32. It was the finding of the hearing officer, Mr. Godinez Ortiz, did not meet the criteria as defined in Washington v. Harper to be considered dangerous to himself or others or gravely disabled as a result of his mental illness. So, yes, they looked at it and they said he's not dangerous. In addition, on page 33. Washington v. Harper, you're saying implicitly that is also to the public, not just to the inmates in the institution. I'm saying when they had this chance, two chances to evaluate. Cancel, please. Don't embellish. The direct answer to the question is they don't say danger in what context. They simply say he is not a danger under Washington v. Harper. So if the question that they're answering is, is he a danger to people in the institution, that's all they've opined. They have not opined as to whether. They have not specifically opined on the question that they would opine in under 4246. Which would be danger outside. And which is the key thing. But I want to go to page 33 real quick. And this is the medical center, the hospital. Basically, they are saying that he doesn't need to be hospitalized. He can be returned to his court jurisdiction pending a decision from the court regarding an additional 4241. So they're saying. To court jurisdiction. Yes. Okay. Was he going to walk in the door? He's in custody. Yes. He'll be there with the company. He'll be having people around him. That is not releasing him onto the streets of San Diego. No, but what they're saying is he doesn't need to be hospitalized. And the way these statutes work, the only way to get someone to the civil commitment point is if they've legally been able to be hospitalized. And that's the most simplest way I can make this argument. These statutes set up. If you're hospitalized, then you can get to commitment. You have to have legal authority for the hospitalization before you can get to that. There's not going to be a second back in court that breaks it. Yes. Because they know about 4246. And that's the way they suspend the release of someone. Whether or not at the end of their sentence. Whether or not it's the end of these competency proceedings. Or any other reasons. For example, many people that are. Let's hear from the other side. Good morning, Your Honor. May it please the Court. I'm William Hall. I'm an assistant United States attorney for the Southern District of California in San Diego. Could you deal. Sorry. And I represent the United States. Could you deal with Harper? Your comment on page 32. The kind of discussion I think. There's a context to all this. I handled the litigation of this case from the beginning. And what had happened from the beginning of the case was that Mr. Godinez was found under 4241 to be incompetent. He was sent to Butner. And Butner came back to the court with a report basically saying we would like to forcibly medicate him. And one of the things that was not taken up in the report was there is a case in the Fourth Circuit which this court had approvingly cited. Hold on. I'm sort of missing most of what you're saying because I'm still thinking about what you're going to say about Harper. Okay. Maybe you could help me on Harper and then come back. Okay. With regards to Harper, kind of the upshot is all the facility was examining the defendant for was his dangerousness inside the facility under Washington v. Harper. I mean, that is indeed the Harper standard. The only way officials at a federal hospital can forcibly medicate a defendant without judicial approval is to medicate him under the Harper standard. And there is, in fact, a provision in the Code of Federal Regulations that specifically sets forth the needs of our people. So basically all that statement that he's not dangerous under the criteria of Harper means is so long as he's in a padded room and a straight jacket when necessary, he's not going to do any harm, so he doesn't meet the requirement for forcible medication. That is the essence of it. So they sent him back to court to get permission for forcible medication? Yes. And what had happened is there was authority in the Fourth Circuit basically saying that the facility has to do this Harper hearing under the Code of Regulations before they could ask for a cell determination, which they hadn't done. In anticipation that this problem could arise at a future time and it abounds to caution, I asked the court, please send them back to Butner so they could have this hearing. And that's what that report that was cited was specifically about. It was the results of that hearing just to determine whether he was a danger to himself or others in the facility. That is all that that report was about. And there has never been a determination in this case by the facility about the dangers outside of it. And as I proffered to the district court below, in fact, the officials at Butner very much want to evaluate this defendant for dangerousness, which is why I'm here. One of the things I wanted to turn to is what Judge Trott, you had talked about earlier about the reading that the defendant has put to the words essentially inhospitalized, just makes no sense of the statutory scheme. And that's what we've also argued in our briefing. We agree with you on that point. And actually just sitting there and looking at the regulations, sometimes you get tunnel vision handling these cases. And something that's obvious doesn't leap out at you for a long time. And what I wanted to bring to the court's attention is that inside the statute itself, Congress made very clear what it meant by hospitalization. If you look at 4241E, it says when the director of the facility in which a defendant is hospitalized pursuant to subsection D determines that the defendant has recovered to such an extent that he's able to understand the nature and consequences of the proceedings against him and assist properly in his defense, he shall properly file a certificate to that effect. And then after that hearing, if the court finds by a preponderance of the evidence that the defendant has recovered, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial and other proceedings. And that's talking about what happens when a defendant is restored to competency and then is discharged from the hospital and the trial proceedings begin at that point. But I think it's very clear what Congress is saying. You know, hospitalized doesn't have this crib notion that the appellant is attributing it to it of actually being physically in the facility. Hospital means the common sense determination that he's been committed under 4241 because of his mental issues and he's in the care and custody of the Federal Medical Center. Just because he's transported to San Diego for a court proceeding doesn't mean he's no longer hospitalized. Not only does I think that comport with common sense, it also comports with 4241E, which is the very next provision in the subsection of the statute. Makes it very clear what Congress meant by hospitalized. And as this Court, I'm sure, has seen many times, you know, Congress could have probably written every single statute in the Federal Code slightly more artfully. Let's not editorialize on Congress's limitations, which we'll probably agree with. But I'd like to bring you back to 4241D. Yes, Your Honor. Now, looking over the record in this case, I noted that the government at some point earlier in the process moved the district court to order that not just a competency but also ask for a determination of dangerousness. I think that was initiated sometime in one of these earlier physical presences at Butner. And all that the court ordered was really to focus on the forced medication at first, the cell hearing. Is that correct? That's correct. Didn't rule on your motion for dangerous determination? No, Your Honor. And I think, again, there are essentially two types of dangerousness. I understand. One's for inmates and one's for the general public. That's correct. Okay. That's the Taylor, Washington v. Taylor Point. So with that foundation, why in this process could not the district court have, as part of the hospitalization, directed that there be a dangerousness determination in the event that the conclusion was that he could not be restored to competency? Could have done that? Theoretically, yes. Okay. Now, so with that then, but that wasn't done. So what we're looking for is how do we fit this person who has been looked at for legitimate reasons, but who has not been convicted of any crime yet, into the 4241 structure? And it says, because he's been held well beyond the time limits that are set forth in the statute, but for such reasonable time, not to exceed four months, as is necessary to determine whether there's a substantial probability, and for an additional reasonable period of time which is not limited by the four months until. And then it gives A. And then B, the pending charges against him are disposed of according to law, whichever is earlier. So as I read your hospitalization concept, is it your argument or contention that he is still being held in Butner for an additional reasonable period of time, and can be so held until the pending charges against him are disposed of according to law? Your Honor, I believe at the termination of the cell hearing, it became clear that the defendant was not going to be able to ever become competent. I understand that. I read the transcript, and there's a colloquy back and forth about whether you had to dismiss the charges. That's correct, Your Honor. Okay. Why did, what's the effect of the charges being dismissed, but the final order not being filed? I think I ordered when I asked the court to, requested the court to issue its findings in the way that it did, there was a reason to it. The court issued its order to transfer the defendant back to Butner prior to dismissing the charges. My request, if I have memory, serves to my motion to dismiss the charges occurred after the court had ordered the transfer. The reason for that is, was to trigger, just make it abundantly clear that 4246 was triggered in that instance. It isn't. 4246 on its face says it's triggered if the director certifies. That's what triggers it. That's what gives the district court authority to proceed under that. There is no certification. Why was it necessary? If anything, it seems to me dismissing the charges took you out of 4241 and should not have had the charges dismissed. You could have, under your theory, returned him for hospitalization. Now the district court could have said, are you prepared to trigger 4246? Your Honor, I think that would put the government in an untenable position, and the reason for that is that there's also case law out of the circuit, and the names aren't coming to me right now, basically saying that the district court may not order an examination pursuant to 4246. That's right. It can't. And all it can do is put him back. You said as long as he was hospitalized and you moved, in fact, for this mental exam focused on dangerousness, the court didn't pick up on it, I still don't understand why it wasn't possible at the conclusion of the cell hearing, finding that it didn't justify forced medication, for before the charges were disposed of to remand him physically to Butner so that the director could decide whether or not he should issue the certification, which would then provide for the ultimate determination that everybody wants to know, which is, is he dangerous to the community? That's what Congress has set up. It's anticipated the circumstance we have here, but in its wisdom has chosen to say that that process depends on a certification by the medical director. And what I understood, Judge Lorenzen, you wanted to get was you wanted to get him back where he could be examined, but your time ran out under 4241, and you can't put him back in Butner, can you? Your Honor, you're arguing he's never come out of Butner, so he's still hospitalized? Your Honor, yes, he's still hospitalized. Counsel, why wouldn't it be easier if, the way I read this statute, Congress wanted to limit hospitalization times for each of these steps until and unless a person is committed for mental illness and dangerousness, because there used to be a problem back in the 50s and 60s that people would never get to trial, they'd never get to court again once it was determined they were mentally ill. So it seems to me it would be a lot easier to say, well, he's charged with a crime. He had a hospitalization. It ended within the required time, and now he's back in court, and he has not been released on bail. So he doesn't go free on the street. And now there's a remand for another mental examination. The time in the hospital is, again, limited by the statute, so it can't be forever. And then there'll be a report to the court and a hearing and a determination by the court on dangerousness. And until all those things are done, since he has not been released on bail, he's under criminal charges that he hasn't been bailed out on, and there's no particular reason to let him out. It seems to me that the problem in the case is, in interpreting the statute, is actually created rather than solved by your argument that hospitalization should be read never to have ended. Your Honor, I think the thing I guess I would disagree about is kind of what the district court here can do. Once it sends the defendant back to Butner, and sends him back for Butner for 45 days, district court's real role in this is over. No, it isn't. Butner's going to report back, and Butner can't decide whether the man is mentally ill and dangerous and should be committed. The judge does, but the district court can't honor that at all. Yes, it's the district court judge that would have that power, because the certification in this instance, Butner's in the Eastern District of North Carolina. The case would be certified in the Eastern District of North Carolina, and that's where the 4246 proceedings would take place. It's the jurisdiction where the judge would be. It would be civilly committed in North Carolina. Yes. And so all Judge Lorenz could really do is say. At that point, the judge would dismiss the criminal proceedings in San Diego. File the order. Exactly. And I think that's exactly what we did here, Your Honor. I got off track because I was. 4241 empowers the district court to hold him for an additional reasonable period of time until the pending charges against him are disposed of. If at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as permitted proceedings to go forward, that the defendant is subject to the provisions of 4246. Yes, Your Honor. Okay. 4246 says if the director of the facility in which he is hospitalized, that's why I thought you were arguing, well, he's still constructively hospitalized, certifies. Okay. There's been no such certification here. Where is it that Judge Lorenz has the authority to return him to Butner, then? It would be, first of all, it would be implied under 4241 where it talks about the defendant being subject to 4246. But specifically, under 4247B, the court can commit the defendant for the purpose of a psychiatric or psychological examination ordered pursuant to 4245, 4246, 4248, 4241, 4244, 4245. And for the purposes of civil commitment, it's 45 days, which is where Judge Lorenz got that time frame from. And I think if I were to do it, what you're doing is you're saying 4247B gives the district judge the power to commit him to be examined up to 45 days under 4246. That's correct. And, Your Honor, I wanted to make just two more quick points to the Court. And first is also in response to Judge Fisher's question about why I dismissed the charges. The most important reason I dismissed the charges is I had no choice. If you look at 4241, the language is in an and that's an or. It says specifically, his mental condition is so improved that the trial may proceed if the court finds that there's a substantial probability that within such additional time he'll attain the capacity to permit the proceedings to go forward. Once that happened, once the cell hearing happened, our legs were cut under from us, from being able to keep him anymore under this specific provision, because once the court determined under cell that the defendant wasn't subject to forcible medication, there was no chance he would ever be restored to competency at that point. Judge Lorenz specifically made that finding. So, really, my dismissal of the charges was essentially an afterthought, because the court had made that finding, as it should have, if it came to the conclusion. We obviously disagreed with the factual conclusions that it came to, but assuming it came to those conclusions, the court came to that determination. And so, I mean, my motion to dismiss, I felt, was proper because I was, by doing that, I was giving the court in North Carolina, the people at Butner, the ability to file the certificate by dismissing the charges as required under 4246. But from a practical perspective, you know, it was not necessarily a nullity, but I, you know, it really didn't affect the proceedings because the conclusions the court came to. Thank you, counsel. May I just make one other very brief point? And this kind of just was also going back to my point that I was addressing to Judge Fisher about Congress. These statutes were written before cell. The cell decision came down in 2003. When Congress was creating the statutory scheme, it wasn't contemplating forcible medication hearings where defendants would be returned to district courts. Prior to that, a defendant would be remaining in the hospital until a determination was made one way or the other on the competency question, once they had been committed under 4241. Only after cell came down did we have these, you know, it's like the debates that we're having about the language. So it really, I was actually going to defend Congress. It really wasn't Congress's fault that they, that the words didn't have 100 percent hand-to-glove fit here because the cell decision came out after they had crafted this language. So I just ask the panel to keep that in mind. Thank you, counsel. We've gone way over time. Unless my colleagues have further questions, I think we'll submit it. Is that okay? United States v. Godinez-Ortiz is submitted.
judges: Trott, Kleinfeld, Fisher